528

## In Re: Report of Huntingdon County Tax Claim Bureau Director, Richard E. Kidd

*Robert B. Stewart, III*, for exceptant.
*David A. Ody*, for Huntingdon County Tax Claim Bureau.

KELLER, *J.*, February 5, 1981—On September 10, 1979, the Huntingdon County Tax Claim Bureau conducted a sale of seated lands for unpaid taxes assessed for 1977 and prior years under the Real Estate Tax Sale Law of 1947, 72 P.S. §5860.101 et seq. L. Marra Real Estate was the successful bidder on:

Parcel 04-14-07 for 9 acres in Brady Twp. with a bid of $1,280.

Parcel 07-05-16 for 30 acres in Cass Twp. with a bid of $4,500.

Parcel 12-01-07 for 18 acres in Dublin Twp. with a bid of $2,700.

Parcel 12-03-01 for 55 acres in Dublin Twp. with a bid of $17,000.

Parcel 47-06-13 for 84 acres in Tell Twp. with a bid of $10,000.

On November 23, 1979, L. Marra Real Estate filed timely exceptions to the confirmation of the

sale alleging non-compliance by the Bureau with various provisions of the Tax Sale Law rendering the sales void and voidable. The Tax Claim Bureau filed a motion to strike the exceptions on December 7, 1979 and a motion to dismiss the exceptions on March 18, 1980 on the grounds that L. Marra Real Estate as a purchaser has no standing under the Tax Sale Law to take exceptions to the sale.

The undersigned was specially assigned to preside in the 20th Judicial District on November 12, 13 and 14, 1980. The above-captioned matter was called for argument on the motions of the Tax Claim Bureau, and hearing on the exceptions. The court concluded that the Bureau's motions were well taken. The motion to dismiss the exception was granted, and the tax sales to L. Marra Real Estate confirmed.

Notice of exceptant's appeal to the Commonwealth Court of Pennsylvania dated December 4, 1980 was served upon the undersigned and filed in the office of the Prothonotary of Huntingdon County on December 10, 1980. Pursuant to Pa.R.A.P. 1925(b) an order was entered on December 11, 1980 directing the exceptant to file of record and serve on the court a statement of matters complained of on appeal. The exceptant's statement was served upon the undersigned on January 14, 1981.

We restate the matters complained of by the exceptant in manner following:

1. As the successful bidder the exceptant had standing to raise the exceptions.

2. Since the exceptant paid his bids, he is entitled to deeds from the Bureau, and therefore may be considered an owner for the purpose of filing exceptions under the Tax Sale Act.

3. By dismissing the exceptions filed by the exceptant the Court has precluded the exceptant or any other person from raising the issue of notices as permitted in sections 607(g) and 617 of the Tax Sale Law, 72 P.S. §5860.607(g), 5860.617.

4. The court erred in not transferring the exceptant's case to the court or division of appropriate jurisdiction as provided by Rule 213(f), 42 Pa.C.S.A. §5101 and 42 Pa.C.S.A. 5103.

This opinion is written in support of the order entered November 12, 1980 dismissing the exceptions.

We consider Issues 1 and 2 as being part and parcel of the same general contention, and will discuss them together.

Section 607 of the Tax Sale Law, 72 P.S. §5860.607 provides:

(a) It shall be the duty of the bureau, not later than sixty (60) days after a scheduled sale was held, to make a consolidated return to the court of common pleas of the county, wherein it shall set forth, (1) a brief description of each property exposed to sale, (2) the name of the owner in whose name it was assessed, (3) the name of the owner at the time of sale, and to whom notice by mail was given as provided by this act, (4) a reference to the record of the tax claim on which the sale was held, (5) the time when and the newspapers in which the advertisement for sale was made, with a copy of said advertisement, (6) the time of sale, (7) the name of the purchaser, if any, and (8) the price for which each property was sold, or that no bid was made equal to the upset price and the property was not sold. Upon the presentation of said return, if it shall appear to said court that such sale has been regularly conducted under the provisions of this act, the

said return and the sales so made shall be confirmed nisi.

(b) The bureau shall, at the expense of the county, within ten (10) days after confirmation nisi of the return, publish a general notice once in a newspaper of general circulation published in the county, and in the legal journal, if any, designated by rules of court for the publication of legal notices, stating (1) that the return of the bureau with respect to any such sale for taxes has been presented to the court, (2) giving the date of such presentation, and (3) that objections or exceptions thereto may be filed by any owner or lien creditor within sixty (60) days after the date of return, otherwise the return will be confirmed absolutely.

(c) In case no objections or exceptions are filed to any such sale within sixty (60) days after the date of return, a decree of absolute confirmation shall be entered as of course by the prothonotary.

(d) Any objections or exceptions to such a sale may question the regularity or legality of the proceedings of the bureau in respect to such sale, but may not raise the legality of the taxes on which the sale was held, or of the return thereof to the bureau, or the claim entered therefor. In case any objections or exceptions are filed they shall be disposed of according to the practice of the court. If the same are overruled or set aside, a decree of absolute confirmation shall be entered by the court.

(e) If such objections or exceptions are sustained and the court deems the defect not amendable, it shall, by its order or decree, invalidate the sale and order another sale to be held in conformity with this act at such time and under such conditions as it shall fix.

(f) From the decision of the court of common pleas, any party interested may appeal to the Supreme or Superior Court as in other cases.

(g) If no objections or exceptions are filed, or where objections or exceptions are finally overruled and the sale confirmed absolutely, the validity of the tax, its return for nonpayment, the entry of the claim, or the making of such claim absolute and the proceedings of the bureau with respect to such sale, except as to the giving of notice as required by the act, or the time of holding the sale, or of petitioning court for an order of sale shall not thereafter be inqured into judicially in equity or by civil proceedings by the person in whose name such property was sold, his or her or theirs, or his, her or their grantees or assigns or by any lien creditor or other person whatever. There shall be no period of redemption after such sale and the sale shall be deemed to pass a good and valid title to the purchaser, free from any liens or encumbrances whatsoever, except such liens as are hereafter specifically saved, and in all respects as valid and effective as if acquired by a sheriff's deed: 1947, July 7, P.L. 1368, art. VI, §607; 1951, May 10, P.L. 258, §1.

In the case at bar, it appears the Tax Claim Bureau complied with the requirements of subparagraphs (a)(b) and (c) in that it submitted its consolidated return to the Honorable Morris M. Terrizzi, Judge of the Court of Common Pleas of Huntingdon County, on September 24, 1979. The sale was confirmed nisi. Within ten days the Tax Claim Bureau caused the general notice required by subparagraph (b) to be published once in *The Daily News*, a newspaper of general circulation in Huntingdon County. The exceptions here under consideration and certain other exceptions were filed. On petition of the Bureau the Honorable

George C. Eppinger, specially presiding, signed an order on February 20, 1980 directing the prothonotary to enter a decree of absolute confirmation for the sale of all parcels of land sold to which no exceptions or objections had been filed to the date of the order.

In the case at bar, it is evident that the exceptant has concluded that he does not wish to purchase the five tracts of real estate he contracted to purchase by being the highest bidder at the September 10th tax sale. To implement that decision, he has filed his exceptions to the sale under Section 607(b) of the Tax Sale Law claiming a right to do so either in his capacity as purchaser or in the alternative as owner of the tracts because he has paid the purchase price bid, and is presently entitled to delivery of a deed from the director of the bureau.

We find no merit in exceptant's theory that he is an "owner," for Section 102, 72 P.S. §5860.102 provides inter alia:

"As used in this act, the following words should be construed as herein defined, unless the context clearly indicates otherwise.

Owner, the person in whose name the property is last registered, if registered according to law, and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property; as to property having been turned over to the bureau by any county, 'owner' shall mean the county."

Nothing in the language of Section 607(b), supra, indicates that the legislature intended a definition of "owner" other than the statutory one to be applied.

Section 607(b)(3), supra, provides:

"That objections or exceptions thereto may be filed by an *owner or lien creditor* within sixty (60) days after the date of the return, otherwise the return will be confirmed absolutely." (Underlining [italics] ours.)

Counsel for the Bureau argues that Section 607(b)(3) limits the class of parties entitled to file objections or exceptions to the consolidated return of the bureau to "owners or lien creditors." A successful bidder at a tax sale is neither owner nor lien creditor. Therefore, the exceptant has no standing to object or except to the director's report.

To the contrary, counsel for exceptant cites Wheatcroft Appeal, 217 Pa. Super. 342, 272 A. 2d 186 (1970) as specific authority for his position noting that the Pennsylvania Superior Court held:

"We believe that the lower court erred in holding that Wheatcroft (tax sale purchaser) did not have standing to except to the refusal to confirm this sale." (Page 344)

Indubitably the Superior Court did hold in Wheatcroft that the successful bidder at a tax sale does have standing to file exceptions under Section 607. However, a careful reading of the facts and an equally careful consideration of the appellate court's analysis of the applicable law leads us to conclude that the case does not provide support for exceptant's basic position that a tax sale high bidder has unequivocal standing to file objections or exceptions to a bureau's consolidated return.

The facts in Wheatcroft, supra, are that the appellant was the successful bidder at a tax sale of the Tax Claim Bureau of Montgomery County. The Bureau filed its consolidated return in court and

recommended that the sale to Wheatcroft not be confirmed because, "Reason Sale Void. Improper notice and question of validity of claim." The Montgomery County Court of Common Pleas confirmed nisi most of the sales in the consolidated return, but declared the sale to Wheatcroft to be null and void and of no effect. Wheatcroft filed exceptions to the decree nisi, and they were dismissed without the taking of evidence on the grounds that the exceptant had no standing to object to the decree. Wheatcroft appealed, and the Superior Court reversed the trial court as above quoted.

In its analysis of the law and in explanation of its decision, the Superior Court observed:

1. From its review of the record there was nothing evidencing a non-compliance with the act other than the Bureau's suggestion, which was not supported by facts and circumstances appearing in the record. "The court's decision having been based on the mere suggestion of the Tax Bureau and not on facts appearing in the record, we think that *Wheatcroft* should have been afforded an opportunity to be heard. *Thus, we hold in the circumstances of this case, Wheatcroft* does have standing to object to the court's action." Page 345. (Underlining [italics] ours.)

2. "We agree·with the lower court, however, that there are conceivable circumstances in which *Wheatcroft* would not have had standing to object. For example, had the court confirmed the sale nisi, *Wheatcroft* would not have had standing to object, naturally, there would have been no reason to do so." Page 345. (Here, we must observe that but for L. Marra Real Estate's exceptions the sale of the five tracts would have been confirmed nisi on February 20, 1980. Thus, the exceptant seeks to boot-

strap himself into a position comparable to that of Wheatcroft.)

3. " . . . in the interest of justice the purchaser should have an opportunity to hear and refute any evidence offered by the Bureau or owner. Without a full hearing on the matter, the door might be opened to fraud whereby the Bureau could repudiate an otherwise valid sale for frivolous or illegal reasons." pp. 345, 346. (By the same token a successful bidder given unequivocal standing to object and except to tax sales could rethink the wisdom of his bid, delay indefinitely settlement of tax liens, and the payment of delinquent taxes to taxing bodies, increase the expense of tax sales, and frustrate the legislative intent in the adoption of the Real Estate Tax Sale Law.)

In the ten years since the Wheatcroft decision no court has followed it. We, therefore, conclude it is limited to its unusual facts.

In State Game Commission v. Tax Claim Bureau of Schuylkill County, 17 Commw. Ct. 15, 19 (1975) the Commonwealth Court held referring to the Real Estate Tax Sale Law:

"This Act sets forth a complete statutory scheme and method for the management and disposition of properties by the Tax Claim Bureau to enforce the collection of delinquent real estate taxes."

In In Re Upset Sale, Tax Claim Bureau of Montgomery County, _____ Pa. Super. _____, 198 A. 2d 640, 641 (1960), the Pennsylvania Superior Court stated, "The Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368 et seq. as amended, (72 P.S. § 5860.101 et seq.) is a self-contained statute." Judge Wieand in In Re: Tax Claim Bureau of Lehigh County, 34 Leh. L.J. 28, 29 (1970) held:

"The Real Estate Tax Sale Law of July 7, 1947,

P.L. 1368, as amended, 72 P.S. §5860.101 et seq., makes provision for objections or exceptions to the sale of real estate at upset price in section 607. Paragraphs (c), (d) and (e) thereof define what may be attacked by exceptions but do not limit the persons who may file them. However, paragraph (b), which mandates the publication of notice that a return of sale has been made to the court, requires such notice to contain a statement that objections or exceptions may be filed 'by any owner or lien creditor' within sixty (60) days after the date of return. Assuming, without deciding, that this language of the statute was intended to prohibit the filing of exceptions by interested persons other than owners or lien creditors. . ."

A review of the Real Estate Tax Sale Law discloses that the legislature did with commendable care draft this legislation and amendments thereto. It demonstrated its recognition of the rights of various parties by, for example, requiring notice of tax claims and sales be given to "owners" of real estate (Section 602) and in the case of mobile homes and trailers also to "encumbrance holders of record" (Sec. 308). Indeed, Section 607(g), supra, includes within its carefully defined parameters " . . . or assigns or by any lien creditor or other person whatever." Had the legislature intended to include successful bidders or "other person whatever" within Section 607(b)(3), it has demonstrated its ability to do so. It must also be observed that in the more than thirty-three years the Tax Sale Law has been in effect in this Commonwealth, the legislature has not seen fit to alter the language of any portion of Section 607 other than to repeal subparagraph (f) in 1971.

We, therefore, remain persuaded that the excep-

tant had no standing to file exceptions in the case at bar.

Exceptant contends in his third matter complained of that this court precluded him or any other person from raising the issue of notices as permitted in Section 607(g) and 617.

Section 617, 72 P.S. §5860.617 provides:

"When a property has been sold at public sale, as herein provided, and there are errors in the description or in the spelling of any person's name, or other obvious errors in the claim, or in the return to court, or in any petition relative to the proceedings, or in the bureau's tax deed, such error may be amended by a petition to court for a rule on all parties interested to show cause why the records should not be amended and such errors corrected. After hearing on the rule, the court may make such order relative thereto as to it seems just and proper."

This section of the Real Estate Tax Sale Law obviously has nothing whatever to do with the "issue of notice" (Exceptant's Statements 3 and 4), and we decline to waste time speculating on exceptant's intention.

Section 607(g) (above quoted) evidences a clear legislative intent to preserve, not withstanding absolute confirmation of a tax sale, the right to inquire judicially in equity or by civil proceedings " . . . as to the giving of notice as required by the act, . . . by the person in whose name such property was sold, his, her or others, or his, her or their grantees or assigns or by any lien creditor or other person whatever."

The exceptant errs in his contention that he or any other proper person is precluded from challenging tax bureau non-compliance with the notice requirements of the Tax Sale Act. Not only does

Section 607(g) specifically preserve the right but even cursory research would disclose actions in equity and to quiet title. In Hoover v. Bucks County Tax Claim Bureau, Pa. Commw. Ct. 405 A. 2d 562, 564 (1979), the Commonwealth Court held:

"It is apparent from the emphasized language that the legislature has not made the statutory procedure the exclusive method for challenging the adequacy of notice and that courts of equity continue to have the power to inqure into the issue even after the judicial confirmation of a tax sale."

We find no merit in the exceptant's third reason for appeal.

Exceptant's fourth contention is that this court erred in dismissing the exceptions rather than transferring them to the court or division of appropriate jurisdiction.

Exceptant relies on:

(1) Pa.R.C.P. 213(f) which provides:

"(f) When an action is commenced in a court which has no jurisdiction over the subject matter of the action it shall not be dismissed if there is another court of appropriate jurisdiction within the Commonwealth in which the action could originally have been brought but the court shall transfer the action at the cost of the plaintiff to the court of appropriate jurisdiction. It shall be the duty of the prothonotary or clerk of the court in which the action is commenced to transfer the record together with a certified copy of the docket entries to the prothonotary or clerk of the court to which the action is transferred."

(2) 42 Pa.C.S.A. §5101 which provides inter alia:

(a) General rule.—Every person for a legal injury done him in his lands, goods, person, or reputation shall have remedy by due course of law, and

right and justice administered without sale, denial or delay.

(3) 42 Pa.C.S.A. §5103:

(a) General rule.—If an appeal or other matter is taken to or brought in a court or magisterial district which does not have jurisdiction of the appeal or other matter, the court or district justice shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper court or magisterial district of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee court or magisterial district on the date first filed in a court or magisterial district.

(c) Interdivisional transfer.—If an appeal or other matter is taken to, brought in, or transferred to a division of a court to which such matter is not allocated by law, the court shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper division of the court, where the appeal or other matter shall be treated as if originally filed in the transferee division on the date first filed in a court or magisterial district.

This court wholeheartedly subscribes to the enlightened legal philosophy enunciated above. However, we are not here considering the transfer of erroneously filed matters or matters in a court or division which has no jurisdiction to a court of division which does. By filing his exceptions the exceptant erroneously sought a statutory relief limited to owners and lien creditors. We are at loss to imagine where we could transfer the exceptions here under consideration or what would be done with them—and by whom—if a transfer were ordered.

Under Pennsylvania's Rules of Civil Procedure

applying to action at law and in equity, we require fact pleading, and our rules specify the pleadings required or permitted by the parties to the litigation. Our substantive law, as well as our procedural law, requires the joinder of all parties affected by the proceeding. If we had transferred the case at bar to the equity side of this court, we cannot conceive how the exceptions before us would constitute a complaint within the Equity Rules of Civil Procedure; nor can we visualize who would be appropriately identified as defendants; how and with what they would be served; or what responsive answers appropriate defendants could make to the exceptions as filed.

We find Pa.R.C.P. 213(f), 42 Pa.C.S.A. §5101 and 5103 inapplicable to the case at bar. The problem of the exceptant is not one of "being in the right church but the wrong pew," but rather of having selected an unavailable vehicle.

Nothing presented to us by the exceptant has persuaded us that we erred.